## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

BONNIE ANNE McCAFFREY,

        Plaintiff,

v.                                                    ACTION NO.  4:18cv154

VIRGINIA PENINSULA REGIONAL JAIL
AUTHORITY,

and

HENRY THOMAS RHIM, JR.,

        Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on the defendant, Virginia Peninsula Regional Jail Authority's ("VPRJA"), partial motion to dismiss the amended complaint for failure to state a claim. ECF No. 33. The motion was referred to the undersigned United States Magistrate Judge on August 7, 2019, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 39. For the reasons discussed below, the undersigned **RECOMMENDS** that the partial motion to dismiss the amended complaint for failure to state a claim be **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff, Bonnie Anne McCaffrey ("Ms. McCaffrey"), was incarcerated in the Virginia Peninsula Regional Jail ("VPRJ") from December 7, 2016 to December 12, 2017.   Amended Complaint ("Am. Compl.") ¶ 7, ECF No. 30.  VPRJ is owned and operated by the VPRJA, a public governing entity created under Virginia law by the political subdivisions of James City County, York County, and the cities of Williamsburg and Poquoson.  Am. Compl. ¶ 5; *see also* Va. Code Ann. §§ 53.1-95.2–95.24 (empowering localities to create jail authorities).  Between April 1, 2017 and July 31, 2017, Mr. Rhim was employed by VPRJ as a jail officer with "direct supervisory capacity" over Ms. McCaffrey.  Am. Compl. ¶ 8.  Under this authority, Mr. Rhim supervised Ms. McCaffrey and several other female inmates as they performed duties in VPRJ's laundry room. *Id.*  Ms. McCaffrey alleges that, during these months, Mr. Rhim committed several acts of "sexual debauchery" against Ms. McCaffrey and other female inmates.  *Id.* at ¶¶ 8–12, 21.[2]

On January 17, 2018, a grand jury returned an indictment against Mr. Rhim.  *Id.* at ¶ 13. On August 27, 2018, Mr. Rhim was found guilty of various charges resulting from his sexual contact with both Ms. McCaffrey and another female inmate.  *Id.* at ¶ 14.  Mr. Rhim was sentenced on November 19, 2018, and is currently incarcerated.  *Id.* at ¶¶ 4, 14.  Additionally, since 2004, there have been "at least six substantiated incidents of sexual misconduct prior to the misconduct

---

[1] The factual history detailed below is based on Ms. McCaffrey's complaint.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) ("When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint.'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 145 (4th Cir. 2019).

[2] While the complaint alleges each instance of "sexual debauchery" in detail, it does not state the specific dates on which these acts took place.

giving rise to [Ms. McCaffrey's claim]" at VPRJ. *Id.* at ¶ 19.[3]

On December 12, 2018, Ms. McCaffrey filed a civil complaint alleging 13 counts against defendants Mr. Rhim and VPRJA, and amended the complaint on June 12, 2019. ECF Nos. 1, 30.

VPRJA answered Ms. McCaffrey's amended complaint on July 3, 2019, and, on the same day, filed the partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and supporting memorandum at issue here. ECF Nos. 33, 34, 36. On July 17, 2019, Ms. McCaffrey filed a motion in opposition to VPRJA's partial motion to dismiss. Pl.'s Mem. in Opp'n to Def.'s Mot. Dismiss ("Pl.'s Opp."), ECF No. 38. VPRJA did not file a reply and the time to do so has expired.

The Court heard argument on VPRJA's motion to dismiss on September 10, 2019. At the hearing, Robert Haddad, Esq., and Andrew Hendrick, Esq., appeared on behalf of Ms. McCaffrey; Jeff Rosen, Esq., appeared on behalf of VPRJA. The court reporter was Heidi Jeffreys.

## II.    AMENDED COMPLAINT

In the amended complaint, Ms. McCaffrey alleges thirteen counts with the following six counts against VPRJA: (1) count 1, that by permitting the continuation of sexual assault of female inmates, VPRJA has denied Ms. McCaffrey of her right to be secure in her person against unreasonable seizure as guaranteed by the Fourth Amendment; (2) count 3, that by failing to maintain and enforce policies to prevent sexual assault, VPRJA has deprived Ms. McCaffrey of her right to be free from cruel and unusual punishment pursuant to the Eighth Amendment; (3) count 6, assault through a liability theory of respondeat superior; (4) count 8, negligence *per se*

---

[3] A separate civil case is currently pending against Mr. Rhim for the alleged sexual assault of another female inmate. *See Wright v. Va. Peninsula Reg'l Jail Auth., et al.*, No. 2:19cv189 (E.D. Va. Apr. 16, 2019).

3

through a liability theory of respondeat superior; (5) count 11, negligence through a theory of direct liability; and (6) count 13, intentional infliction of emotional distress through a liability theory of respondeat superior. Am. Compl. ¶¶ 22–95. Of the six counts against it, VPRJA moves to dismiss five, counts 3, 6, 8, 11, and 13.

## III.   ANALYSIS

### A.   The standard of review applicable to motions to dismiss under Rule 12(b)(6).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint"; it does "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999) (quotation and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While plausibility "is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When reviewing a motion to dismiss, the Court must "assume[s] all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff," but it does not "need [to] accept the legal conclusions drawn from the facts, and [] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,

4

591 F.3d 250, 253 (4th Cir. 2009) (citations and internal quotation marks omitted).  Accordingly, the Court should only grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove *any* set of facts in support of [her] claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (emphasis added).

**B.    VPRJA's partial motion to dismiss for failure to state a claim should be denied.**

**1.    Ms. McCaffrey's section 1983 claim alleging an Eighth Amendment violation establishes plausible grounds for municipal liability (count 3).**

In count 3, Ms. McCaffrey alleges an Eighth Amendment violation under 42 U.S.C. § 1983. Am. Compl. ¶¶ 32–36. Ms. McCaffrey argues that Mr. Rhim "negligently, grossly negligently, recklessly, willfully, wantonly, maliciously, and/or intentionally groped" her and "ordered [her] to perform sexual acts for his own sexual gratification." *Id.* at ¶ 23. Ms. McCaffrey further contends that Mr. Rhim's conduct was "unreasonable, unjustified, and unconstitutional." *Id.*

Ms. McCaffrey alleges that, during her period of incarceration, VPRJA "failed to maintain or enforce policies to prevent sexual assaults of inmates by Jail employees." *Id.* at ¶ 16. Additionally, Ms. McCaffrey asserts that there is a "pattern in history" at the jail of "sexual debauchery using inmates for sexual gratification by the guards and allowing sexual conduct between inmates oftentimes for the prurient interest of the guards who watched." *Id.* at ¶ 19. Ms. McCaffrey alleges that VPRJA's response to the six prior substantiated claims of sexual misconduct has been "woefully inadequate such that it has been no response at all" and, consequently, that it "has allowed the sexually deviant behavior to continue unabated such that it rises to the level of deliberate indifference on the part of Defendant [VPRJA]." *Id.* at ¶ 20. In this way, Ms. McCaffrey concludes that VPRJA's failure to respond to claims of sexual assault has

"grown" into a "specific custom or policy" by which VPRJA "turn[s] a blind eye to this sexual debauchery." *Id.* at ¶ 21. By doing so, VPRJA makes it "perfectly permissible for jail employees to use inmates for their own sexual pleasure and/or to allow inmates to engage in sexual acts for the sexual pleasure of jail employees." *Id.*

VPRJA contends that count 3 fails to state an Eighth Amendment claim against VPRJA because it does not allege that VPRJA maintained an unconstitutional policy or custom that allowed for jail employees to commit acts of sexual assault against female prisoners. *See* Def.'s Mem. in Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 34 at 6–9. In *Monell*, the Supreme Court ruled that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Santos v. Frederick County Bd. of Comm'rs*, 725 F.3d 451, 469–70 (4th Cir. 2013) ("[M]unicipal liability under Section 1983 does not amount to respondeat superior.") (citing *Monell*, 436 U.S. at 691); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Instead, to state a section 1983 claim against a municipal entity, Ms. McCaffrey must allege that VPRJA "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or that it had adopted a "governmental 'custom'" that deprived Ms. McCaffrey of her constitutional rights. *Monell*, 436 U.S. at 690–91. The "unconstitutional official policy or custom" required for a finding of liability under section 1983 can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

6

*Woodson v. City of Richmond*, 88 F. Supp. 3d 551, 563–64 (E.D. Va. 2015) (quoting *Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003)).

The Fourth Circuit has clarified that the "deliberate indifference theory" of section 1983 liability does not apply to municipal entities. *See Heywood v. Va. Peninsula Reg'l Jail Auth.*, No. 2:15cv195, 2015 U.S. Dist. LEXIS 112517 at *8 (E.D. Va. July 21, 2015) ("[T]he deliberate indifference theory of § 1983 liability only applies to supervisory individuals or officials.") (citing *Stroud*, 13 F.3d at 799), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 111249 (E.D. Va. Aug. 21, 2015). The "custom or usage" theory of section 1983 liability may lie where an entity "remain[s] inactive 'in the face of a known history' of a constitutional violation." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 693 (E.D. Va. 2004) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984)).

In addition to alleging a "custom or usage," Ms. McCaffrey must also show a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). To establish the link, Ms. McCaffrey must demonstrate that "the specific violation was made reasonably probable by permitted continuation of the custom," and that a "failure to correct the known practices must be such as to make the specific violation 'almost bound to happen, sooner or later.'" *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987).

VPRJA cites to the court's decision in *Heywood* as support for its argument that Ms. McCaffrey has not alleged a VPRJA policy or custom to overcome defendant's motion to dismiss. Def.'s Mem. 6. The facts in *Heywood* are similar to the ones at issue in this case. *See generally Heywood v. Va. Peninsula Reg'l Jail Auth.*, 217 F. Supp. 3d 896 (E.D. Va. 2016). The plaintiff filed a complaint alleging that a jail employee had sexually assaulted her while she performed

7

duties as an inmate worker in VPRJ's medical unit. *Id.* at 898–99. Although the factual circumstances may be similar, this matter is distinguishable from *Heywood* in two significant ways.

First, the municipal liability issue in *Heywood* was decided on defendant's motion for summary judgment, as opposed to defendant's motion to dismiss.[4] *Compare Heywood*, F. Supp. 3d at 903 (granting VPRJA's motion for summary judgment), *with Heywood*, 2015 U.S. Dist. LEXIS 112517, at *8 (addressing VPRJA's motion to dismiss). At the summary judgment stage, the burden of the nonmoving party is much greater: "[they] must go beyond the facts alleged in the pleadings, and rely instead on affidavits, depositions, or other evidence to show a genuine issue for trial." *Heywood*, 217 F. Supp. 3d at 899 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also M & M Med. Supplies & Servs., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992) ("A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986))). A Rule 12(b)(6) motion to dismiss puts only the pleadings at issue, and, therefore, "simply alleging . . . a[n Eighth Amendment] claim is, by definition, easier" than prevailing on it. *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 403 (4th Cir. 2014). At this phase, Ms. McCaffrey must only allege a facially plausible claim.

---

[4] The original and amended complaint in *Heywood* did not allege an unconstitutional policy or custom, and were therefore dismissed upon defendant's motion. *See Heywood*, 2015 U.S. Dist. LEXIS 112517, at *5, *8. Following dismissal, Heywood amended her complaint a second time to allege that VPRJA maintained an unconstitutional policy or custom. Defendant subsequently filed a motion for summary judgment. Therefore, at the summary judgment stage, the issue of whether VPRJA maintained an unconstitutional policy or custom was squarely before the Court.

Second, in *Heywood*, plaintiff's attorney "conceded that she had no evidence of such a policy or custom." *Heywood*, 2015 U.S. Dist. LEXIS 112517, at *8. Unlike the plaintiff in *Heywood*, Ms. McCaffrey has specifically alleged that VPRJA maintains an unconstitutional policy or custom:

> There is a pattern in history at the Virginia Peninsula Regional Jail of sexual debauchery using inmates for sexual gratification by the guards and allowing sexual conduct between inmates oftentimes for the prurient interest of the guards who watched. Since 2004, there have been at least six substantiated incidents of sexual misconduct prior to the misconduct giving rise to this claim.

Am. Compl. ¶ 19. Further, Ms. McCaffrey alleges that VPRJA's response to the substantiated claims of sexual assault has been "woefully inadequate such that it has been no response at all and has allowed the sexually deviant behavior to continue unabated." *Id.* at ¶ 20. The result, Ms. McCaffrey asserts, is a "specific custom or policy which has grown out of Defendant [VPRJA's] turning a blind eye to this sexual debauchery." *Id.* at ¶ 21. Emphasizing that there have been at least six substantiated claims of sexual assault in VPRJ—including another pending case against Mr. Rhim—Ms. McCaffrey has sufficiently alleged that VPRJA's lack of response to sexual assault is directly and causally linked to the deprivation of her constitutional rights. *Id.*

Accordingly, Ms. McCaffrey has sufficiently pled an Eighth Amendment claim, and defendant's motion to dismiss count three should be **DENIED.**

### 2.    State Tort Law Claims Against VPRJA (counts 6, 8, 11, and 13)

VPRJA moves to dismiss Ms. McCaffrey's state law claims against the jail authority alleged in counts 11 (negligence) and 13 (intentional infliction of emotional distress). All of Ms.

McCaffrey's state law claims were timely filed.[5]  Therefore, defendant withdrew its motion to dismiss counts 6 and 8 at the September 10, 2019 hearing, which was based on statute of limitations grounds.  The Court will analyze the remaining counts, counts 11 and 13, because the defendant also raised a sovereign immunity argument for dismissal of these claims.

      **a.**      **Negligence (count 11)**

In count 11, Ms. McCaffrey alleges a direct liability claim of negligence against VPRJA. *Id.* at ¶¶ 77–81. VPRJA seeks dismissal of Ms. McCaffrey's simple negligence claim in count 11 on grounds of sovereign immunity.[6]  Def's Mem. 11–15.

As she was an inmate when the acts of sexual misconduct occurred, Ms. McCaffrey contends that VPRJA "had a duty to act with reasonable care in regard to the exercise of its duties as a correctional facility and in the treatment of Plaintiff as an inmate in its care, custody and control." Am. Compl. ¶ 78. Additionally, Ms. McCaffrey argues that VPRJA, "by and through the conduct of its employee, Rhim, had a duty to act with reasonable care in regard to the exercise of Rhim's duties as a jail officer," and to "observe and monitor" plaintiff's actions while incarcerated. *Id.* at ¶ 79. Ms. McCaffrey alleges that, by neglecting its duties to observe and monitor both plaintiff and its employee, Mr. Rhim, VPRJA directly and proximately caused

---

[5] In its motion to dismiss, VPRJA argued that all of Ms. McCaffrey's personal injury claims were time-barred pursuant to Virginia Code § 8.01-243.2. Def's Mem. 9–10. While Ms. McCaffrey's personal injury claims would otherwise be time-barred, Virginia Code § 8.01-229(K) tolls the statute of limitations during criminal proceedings "arising out of the same facts" as the personal action for damages. Va. Code Ann. § 8.01-229(K) (2016); Pl.'s Opp. 4–6. During the hearing on September 10, 2019, VPRJA's attorney conceded that Ms. McCaffrey's state law claims were timely filed by virtue of Mr. Rhim's criminal prosecution and the operation of Virginia Code § 8.01-229(K). Accordingly, VPRJA withdrew its request to dismiss counts 6, 8, 11, and 13 on statute of limitations grounds.

[6] At the hearing on September 10, 2019, defense counsel clarified that VPRJA only asserted sovereign immunity for count 11, and not with respect to the remaining state law claims (counts 6, 8, and 13).

plaintiff to suffer "great damages." *Id.* at ¶ 80.

A complainant may not maintain a tort action against the Commonwealth of Virginia unless it consents to suit or a statute creates such consent. *Virginia Electric & Power Co. v. Hampton Redevelopment & Housing Auth.*, 225 S.E.2d 364 (1976).   VPRJA is an entity within the Commonwealth.   Local entities within the Commonwealth, such as VPRJA, generally are not entitled to the same sovereign immunity as the Commonwealth. *See, e.g., Heywood*, 2015 U.S. Dist. LEXIS 112517, at *9 ("VPRJ[A] concedes that it does not share in the Commonwealth's broad sovereign immunity from tort liability, like agencies and counties of the Commonwealth."); *Hampton Redevelopment*, 225 S.E.2d at 367 (finding that "an entity purely local in nature" is not entitled to the same immunity as the Commonwealth enjoys).

Municipalities may also be protected from tort liability under Virginia law, albeit not "the same immunity from tort liability that is enjoyed by the Commonwealth." *Hampton Redevelopment*, 225 S.E.2d at 368.   Municipal corporations[7]—local entities created by municipalities—may also share in this immunity. *See id.* at 367; *Hampton Roads Sanitation Dist. Comm'n v. Smith*, 68 S.E.2d 497, 501 (Va. 1952).   As opposed to the Commonwealth's near-blanket immunity from tort liability, both municipalities and municipal corporations may only claim immunity for torts committed while acting in a governmental capacity. *See Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*, No. 4:06cv25, 2006 U.S. Dist. LEXIS 79719, at *5–6 (E.D. Va. Nov. 1, 2006).

While VPRJA is not a municipality, it seeks to be treated as a municipal corporation and thus protected by immunity. Def.'s Mem. 11.   As with municipalities, if it is appropriate for a

---

[7] "Municipal corporations are entities created to 'administer the state's local affairs.'" *Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-003-JAG, 2014 U.S. Dist. LEXIS 67127, at *7 (E.D. Va. May 15, 2014) (quoting *Black's Law Dictionary* 1113 (9th ed. 2010)).

court to treat the local entity as a municipal corporation, the entity is immune from liability arising from its performance of governmental, as opposed to proprietary, functions. *See Hampton Redevelopment*, 225 S.E.2d at 367–68; *see also City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (Va. 2004) ("Sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions. There is no municipal immunity, however, in the exercise of proprietary functions.") (internal citations omitted).

Accordingly, even though it cannot be shielded by the same immunity as the Commonwealth, a local entity such as VPRJA, which is created under Virginia law, may alternatively "establish that it is immune from an action in negligence in one of two ways." *Heckenlaible*, 2006 U.S. Dist. LEXIS 79719, at \*7. First, VPRJA may establish that it is entitled to the Commonwealth's broad immunity from tort liability by showing that it is an arm or agency of the state. *Id.* Second, the entity may establish that it is entitled to the immunity afforded a municipal corporation by showing that it is appropriate for a court to treat the entity as such. *Id.*

### i.    VPRJA is not entitled to sovereign immunity from plaintiff's simple negligence claim (count 11) because VPRJA is not an arm or agency of the Commonwealth.

The Fourth Circuit has considered whether regional jail authorities are arms of the state, and have universally held that they are not. *See, e.g., Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002) ("We are of opinion that the Regional Jail Authority is not an arm of the State for purposes of Eleventh Amendment immunity."). When considering whether an entity is an arm of the state, the "principal factor to be considered is 'whether a judgment against the government entity would have to be paid from the State's treasury.'" *Id.* (quoting *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001)). In the case of a regional jail authority, "Virginia's treasury is not implicated," and "the state law scheme does not appear to treat the Authority as an

arm of the state." *Id.* at 184–85. Additionally, VPRJA is not an agency of the Commonwealth because its creation necessitates "local activation." *See* Va. Code Ann. § 53.1-95.2 (1992); *Hampton Redevelopment*, 225 S.E.2d at 367 ("We believe [this] statutory provision[] dictate[s] the conclusion that a municipal . . . authority is an entity purely local in nature and not a state agency performing a function of state government.").

ii.   **VPRJA is not entitled to sovereign immunity from plaintiff's simple negligence claim (count 11) because VPRJA is not a municipal corporation.**

Because VPRJA is not an arm or agency of the Commonwealth, its entitlement to sovereign immunity is contingent upon whether VPRJA is a municipal corporation. *See Heckenlaible*, 2006 U.S. Dist. LEXIS 79719, at *7 (holding that a regional jail authority is only entitled to immunity from tort liability if it is an arm or agency of the state, or if it is a municipal corporation acting in a governmental capacity). To determine whether an entity should be considered a municipal corporation, the Court must consider two factors: (1) whether the entity possesses the six essential "attributes of [a] municipality"; and (2) whether, "in light of this initial consideration, the particular purpose for determining whether a municipal corporation is present." *Id.* at *6–7 (citing *Hampton Redevelopment*, 225 S.E.2d at 367); *see also Smith*, 68 S.E.2d at 500 (establishing the two-factor test used in *Heckenlaible* and *Hampton Redevelopment*).

The six attributes of a municipal corporation are as follows:

> (1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth; (2) Creation to serve a public purpose; (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property; (4) Possession of the power of eminent domain; (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; and (6) Management of the corporation vested in a board of directors or a commission.

13

*City of Richmond v. Richmond Metro. Auth.*, 172 S.E.2d 831, 832 (Va. 1970). Courts are split as

to whether an entity must have all six attributes to be considered a municipal corporation,[8] but

many of the conflicting opinions concern entities other than VPRJA.  As it relates to the specific

jail authority at issue, this Court has twice held that VPRJA is not a municipal corporation because

it is not a political subdivision and because it lacks the power of eminent domain.  *See Heywood,*

2015 U.S. Dist. LEXIS 112517, at *13; *Heckenlaible*, 2006 U.S. Dist. LEXIS 79719, at *9.  Of

the six attributes of a municipal corporation, four were uncontested in *Heywood* and *Heckenlaible*,

and the same four attributes remain uncontested in this case.[9]  In *Heywood* and *Heckenlaible*, the

Court rejected VPRJA's designation as a municipal corporation.  The undersigned will adopt the

---

[8] Some decisions of this Court have held that a local entity needs all six attributes to be considered a municipal corporation.  *See Heckenlaible*, 2006 U.S. Dist. LEXIS 79719, at *6 (holding that VPRJA's lack of all six municipal attributes dictated that it should not be treated as a municipal corporation); *Boren v. Northwestern Reg'l Jail Auth.*, No. 5:13cv013, 2013 U.S. Dist. LEXIS 140169, at *14–15 (W.D. Va. Sept. 30, 2013) ("The [regional authority] concedes that it does not meet all six essential attributes . . . . [therefore], the court concludes that . . . [it] cannot be treated [as] a municipal corporation."); *Hauth v. Southeastern Tidewater Opportunity Project, Inc.*, 420 F. Supp. 171, 175 (E.D. Va. 1976).

The following courts have held that a local entity does not need all six attributes to be considered a municipal corporation: *Costine v. Correct Care Sols., LLC*, No. 2:19cv53, 2019 U.S. Dist. LEXIS 110916, at *16 (E.D. Va. July 2, 2019); *Haleem v. Quinones*, No. 5:17-cv-00003, 2017 U.S. Dist. LEXIS 162081, at *10–11 (W.D. Va. Sept. 30, 2017); *Dowdy*, U.S. Dist. LEXIS 67127, at *8 ("To have the protection of sovereign immunity, a locally created entity need not have *all* the characteristics of a municipal corporation."); *York Cty. v. Peninsula Airport Comm'n*, 369 S.E.2d 665, 666 (Va. 1988) ("We have identified six attributes *pertinent* to that inquiry." (emphasis added)); *Smith*, 68 S.E.2d at 501 ("While it is true that the more attributes of a municipal corporation an agency has the more likely it is to be treated as a municipal corporation, the final decision rests on the specific issue[s] of each case.").

[9] *See Heckenlaible*, 2006 U.S. Dist. LEXIS 79719, at *9 ("[T]he Jail Authority possesses four of the six essential attributes of a municipal corporation. The Jail Authority serves a public purpose, has a common seal, can sue and be sued, can enter into contracts, may borrow money and issue tax exempt bonds, and has corporate management vested in a corporate board.").

same holding. For clarity purposes, this Court will briefly review the two attributes VPJRA lacks.

The *Heywood* court opined that the two attributes—designation as a political subdivision and the power of eminent domain—are the "most intrinsic to municipal corporations." *Heywood*, 2015 U.S. Dist. LEXIS 112517, at *13 (citing *Short Pump Town Ctr. Cmty Dev. Auth. v. Hahn*, 554 S.E.2d 441, 446 (Va. 2001)). In *Heywood*, the court considered VPRJA's motion to dismiss plaintiff's state tort law counts, seeking to recover from an alleged rape that took place while the plaintiff was an inmate at VPRJ. *Id.* at *1–2. After finding that VPRJA lacked the attributes "unique to municipal corporations," the Court denied VPRJ's motion to dismiss. *Id.* at *17.

VPRJA lacks the two attributes considered by this Court to be the "most intrinsic to municipal corporations"—it was not designated as a political subdivision and does not have the power of eminent domain. *Id.* at *13. Whether a local entity is a political subdivision is determined solely by referring to its enabling legislation.[10] *See Short Pump*, 554 S.E.2d at 447 (opining that "the General Assembly clearly knows how to denominate an authority as a 'political subdivision' when it wishes to do so"). The statute authorizing municipalities within the Commonwealth to create regional jail authorities, such as VPRJA, does not include language designating the jail authorities as political subdivisions. Va. Code Ann. § 53.1-95.7 (1994). Therefore, "in the absence of any statutory designation of [VPRJA] . . . as [a] 'political subdivision[],'" VPRJA is "not such an entity."[11] *Short Pump*, 554 S.E.2d at 447.

---

[10] Designation as a political subdivision is an attribute of municipal character that is "*exclusively vested in, and conferred by Virginia's legislature.*" *Heywood*, 2015 U.S. Dist. LEXIS 112517, at *14 (citing *State Highway Comm'r of Va. v. Hooker Furniture Corp.*, 198 S.E.2d 649, 650 (Va. 1973)).

[11] The Court finds unpersuasive the argument that a jail authority should be considered a political subdivision because it is created by municipalities that are political subdivisions. *See Dowdy*, 2014 U.S. Dist. LEXIS 67127, at *9 ("While Virginia law does not designate a jail authority as a

VPRJA similarly lacks the power of eminent domain. Va. Code Ann. § 53.1-95.7. In *Light v. City of Danville*, the court held that "[t]he power of eminent domain is a most important incident of the power of a sovereign," 190 S.E. 276, 281 (Va. 1937), and should therefore be considered an essential component of a municipal corporation. As with an entity's status as a political subdivision, the power of eminent domain is "exclusively vested in, and conferred by Virginia's legislature." *Heywood*, 2015 U.S. Dist. LEXIS 112517, at *14. While it may be true that the localities which make up VPRJA—James City County, York County, City of Williamsburg, and City of Poquoson—can exercise the power of eminent domain on VPRJA's behalf, VPRJA as a governing body does not have this power, and therefore lacks the second "intrinsic" attribute of a municipal corporation. *Id.* at *13. While VPRJA has four attributes of a municipal corporation, it lacks the two attributes "most intrinsic" to municipal corporations. *Id.* Therefore, with respect to the first factor, defendant is not entitled to sovereign immunity.

The second factor courts should consider when deciding whether a local entity is a municipal corporation is, "in light of this initial consideration [of the six attributes of a municipal corporation], the particular purpose for determining whether a municipal corporation is present." *Heckenlaible*, 2006 U.S. Dist. LEXIS 79719, at *6–7 (citing *Hampton Redevelopment*, 225 S.E.2d at 367). While courts have taken divergent approaches in applying the second factor, the most persuasive approach requires examining whether the local entity is performing a function that is governmental or proprietary. *Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-003-JAG, 2014 U.S. Dist. LEXIS 67127, at *9 (E.D. Va. May 15, 2014) (citing *Trans. Inc. v. Falls Church*, 254 S.E.2d 62, 63 (1979)); *Hauth v. Southeastern Tidewater Opportunity Project, Inc.*, 420 F. Supp.

political subdivision, for all intents an authority runs a jail the same way a city, county, or town would.").

16

171, 174 (E.D. Va. 1976).  This is consistent with the Supreme Court of Virginia's analysis of a municipality's claim of sovereign immunity in *City of Chesapeake v. Cunningham*, and the Court adopts that approach here.  *Cf. City of Chesapeake*, 604 S.E.2d at 426 (discussing whether the shield of sovereign immunity applies by examining whether a municipality was performing a governmental or proprietary function).[12]

Whether VPRJA performs a governmental or proprietary function is a clear analysis;  the Virginia Supreme Court has held that the operation of a jail is a governmental function.  *See Franklin v. Town of Richlands*, 170 S.E. 718, 719 (Va. 1933); *see also Brown*, 308 F. Supp. 2d at 691 (explaining that the Supreme Court of Virginia has held that the maintenance of a jail is a "purely governmental function").  The authorizing statute for regional jail authorities further supports this conclusion:  "Each [jail] authority created hereunder shall be deemed to be an instrumentality exercising public and essential *governmental* functions to provide for the public safety and welfare."  Va. Code Ann. § 53.1-95.7 (emphasis added).

Even though VPRJA satisfies the second factor—because operating a jail is a governmental function from which municipalities are protected by sovereign immunity—because VPRJA is not a political subdivision and does not have the power of eminent domain, it is not a municipal corporation under the first factor.  For these reasons, the Court finds that VPRJA is not a municipal corporation and therefore is not entitled to sovereign immunity.  Accordingly, the Court **RECOMMENDS** that VPRJA's motion to dismiss Ms. McCaffrey's simple negligence claim be **DENIED**.

---

[12] Other courts have examined whether the "particular purpose for determining whether a municipal corporation is present in [the] case" is substantive or procedural.  *Hampton Redevelopment*, 225 S.E.2d at 367.  *See also Smith*, 68 S.E.2d at 501; *Heywood*, 2015 U.S. Dist. LEXIS 112517, at *12.

### b.    Intentional Infliction of Emotional Distress (count 13)

In her sixth claim (count 13), Ms. McCaffrey alleges that VPRJA is liable, through a theory of respondeat superior, for intentional infliction of emotional distress.  Am. Compl. ¶¶ 88–95. VPRJA contends that, in count 13, Ms. McCaffrey failed to sufficiently allege severe emotional distress and, therefore, cannot recover for her distress under Virginia law.  Def.'s Mem. 16–17.

In count 13, Ms. McCaffrey asserts that VPRJA is liable, through a theory of respondeat superior, for intentional infliction of emotional distress.  Am. Compl. ¶¶ 88–95.  Ms. McCaffrey asserts that she "repeatedly, vigorously and consistently protested and resisted all of . . . [VPRJA's] behavior . . . by and through the conduct of its employee, Rhim."  *Id.* at ¶ 89.  Further, that the acts of sexual misconduct occurred "at Defendants' [VPRJA's] place of business," while Mr. Rhim was acting within the scope of his employment, "and [that VPRJA's] conduct, by and through the conduct of its employee, Rhim, constituted assault and battery, harassment and humiliation that was outrageous[13] and intentional, without justification, and for the purpose of inflicting emotional distress upon Plaintiff."  *Id.* at ¶¶ 89, 93.  Ms. McCaffrey asserts that VPRJA, "by and through the conduct . . . of its employee, Rhim, intended to make sexual advances toward plaintiff, to physically grab and restrain her against her will, to sexually assault her, and to sexually batter her by intimately touching her."  *Id.* at ¶ 90.  From this, Ms. McCaffrey contends that VPRJA intended the acts of sexual misconduct and "knew, or should have known, that said conduct would likely result in Plaintiff's severe emotional distress."  *Id.* at ¶ 91.  Ms. McCaffrey asserts that VPRJA's misconduct directly and proximately caused her to suffer "great damages," which include the

---

[13] Ms. McCaffrey asserts that such misconduct on VPRJA's part is "outrageous" in that it "offended generally accepted standards of decency and morality."  Am. Compl. ¶ 92.

following injuries:

> physical injury; severe mental anguish, stress, embarrassment,
> humiliation, inconvenience, and pain and suffering, causing
> symptomatic reaction, including but not limited to: depression,
> nervousness, inability to sleep, severe and persistent nightmares,
> panic attacks, and severe anxiety impacting Plaintiff's daily living
> activities; medical expenses; loss of enjoyment of life and other
> nonpecuniary injury in amounts to be determined at trial.

*Id.* at ¶ 94.

Virginia caselaw generally disfavors intentional infliction of emotional distress ("IIED") claims, because they are not often accompanied by physical symptoms and may therefore be fabricated more easily than claims for physical injuries. *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008) ("[T]here are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury."); *see also Morris v. City of Charlottesville*, No. 300CV00029, 2001 WL 743771, at *9 (July 3, 2001 W.D. Va.) ("Virginia courts have declared this tort unfavored in law and have established a very high threshold for plaintiffs to meet.")   Accordingly, Virginia abides by a strict four-part test through which a plaintiff may establish a claim for IIED "in the absence of accompanying physical injury." *Supervalu*, 666 S.E.2d at 343.

That test requires that: (1) "the wrongdoer's action was intentional or reckless"; (2) the conduct was outrageous and intolerable such that it "offends against the generally accepted standards of decency and morality"[14]; (3) there is "a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) the conduct caused plaintiff severe emotional distress.

---

[14] Or, as the court stated in *Russo v. White*, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  400 S.E.2d 160, 162 (Va. 1991).

*Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974); *see also Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007) (applying the four-part test).  To satisfy the four-part test, plaintiff must allege "all facts necessary to establish a cause of action." *Ely v. Whitlock*, 385 S.E.2d 893, 897 (Va. 1989). Additionally, plaintiff must plead the fourth prong of the test—that she suffered "severe emotional distress"—with sufficiently specific pleadings. *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991); *see also Almy*, 639 S.E.2d at 188 (finding plaintiff sufficiently alleged severe emotional distress).

Under the Virginia rules, a plaintiff[15] must plead "with the requisite degree of specificity." *Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005).  But under Rule 8 of the Federal Rules of Civil Procedure[16]—which applies in diversity and supplemental jurisdiction cases—a plaintiff must only provide a "simplified notice pleading," in which she pleads "a short and plain statement of the claim showing that . . . [she] is entitled to relief."[17]  Fed. R. Civ. Proc. 8(a)(2); *Hatfill*, 416 F.3d at 337 (finding that Rule 8 applies even when state law requires a more specific pleading standard); *see also Daniczek v. Spencer*, 156 F. Supp. 3d 739, 759 (E.D. Va. 2016) (following *Hatfill* and holding that *Russo* "does not supplant Rule 8 at the motion to dismiss

---

[15] Because this Court has supplemental jurisdiction over plaintiff's state tort law claims pursuant to 28 U.S.C. § 1367(a), it must apply Virginia state substantive law to resolve Ms. McCaffrey's claim. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 77–79 (1938); *Veney, et al. v. Douglas*, No. 3:10cv542, 2011 WL 1637107, at *4 (E.D. Va. Apr. 29, 2011) ("The Court exercises supplemental jurisdiction over the Virginia state law claims pursuant to 28 U.S.C. § 1367. Accordingly, . . . this Court must apply Virginia substantive law to the allegations raised in this matter.") (citing *Erie*, 304 U.S. at 64).

[16] District courts in the Fourth Circuit have confirmed that federal pleading standards such as Rule 8 are "procedural," and not "substantive," and therefore govern state law claims. *See, e.g., McFadyen v. Duke University*, 786 F. Supp. 2d 887, 920 (M.D.N.C. 2011), *aff'd in part, rev'd in part, Evan v. Chalmers*, 703 F.3d 636 (4th Cir. 2012); *Jackson v. Mecklenburg County*, No. 3:07cv218, 2008 U.S. Dist. LEXIS 104410, at *5–6 (W.D.N.C. July 30, 2008).

[17] As earlier discussed, the Rule 8 standard must still comport with the Supreme Court's holdings in *Twombly* and *Iqbal*; plaintiff's claim must be facially plausible. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

stage.").

In *Russo*, the plaintiff alleged that she suffered "severe emotional distress," and explained that she was "nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work." *Russo*, 400 S.E.2d at 163. The *Russo* court found it important that plaintiff did not show any of the following: (1) "objective physical injury caused by the stress"; (2) confinement in her home or a hospital; and (3) loss of income due to distress. *Id.* Because plaintiff failed to allege these more specific indicators of physical symptoms, the court found that the distress suffered was "not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.* Similarly, the court in *Fuller v. Aliff* held that, because plaintiffs' complaint only proffered a "conclusory statement" that they suffered "severe emotional distress," plaintiffs had not adequately pled "severe" emotional distress. 990 F. Supp. 2d 576, 581 (E.D. Va. 2013).

In *Almy*, however, the Supreme Court of Virginia found that plaintiff had properly alleged grounds for an IIED claim because she had "alleged that the defendants' actions rendered her functionally incapable of carrying out any of her work or family responsibilities." *Almy*, 639 S.E.2d at 188. To distinguish *Almy* from cases like *Russo*, the court noted that Almy's emotional distress "reached such a level of severity that '[e]very aspect of [her] life [was] fundamentally and severely altered,' such that she 'had trouble even walking out the front door.'" *Id.*

Ms. McCaffrey has sufficiently alleged each element of IIED in accordance with Rule 8(a)(2) of the Federal Rules of Civil Procedure and the *Twombly* and *Iqbal* "facial plausibility" standard. *See Iqbal*, 556 U.S. at 678. As listed above, following multiple instances of sexual assault detailed in the amended complaint, Ms. McCaffrey alleged that she suffered both physical

injury[18] and mental anguish, which manifested symptomatically.  Am. Compl. ¶ 25.  The facts Ms. McCaffrey alleged are more than a mere "conclusory statement" of severe emotional distress; instead, the plaintiff detailed specific instances of sexual assault, and explained the physical and mental symptoms she experienced as a result.  *Fuller*, 990 F. Supp. 2d at 581.

Alternatively, even if Ms. McCaffrey were required to plead "severe emotional distress" with greater specificity, as required under Virginia law, she has alleged facts with sufficient particularity so as to overcome defendant's motion to dismiss.  Ms. McCaffrey's pleading is more analogous to the plaintiff's claim in *Almy*, which properly alleged all four elements of IIED.  *See Almy*, 639 S.E.2d at 188.  The allegations of severe emotional distress in *Almy* included "several debilitating conditions, including depression, nervousness, and an inability to sleep, which ultimately caused a complete disintegration of virtually every aspect of her life."  *Id.*  Like the plaintiff in *Almy*, who alleged that her severe distress affected "every aspect of her life," Ms. McCaffrey asserts that the "mental anguish" she suffered affected her "*daily* living activities." Am. Compl. ¶ 25 (emphasis added).

Further, unlike the plaintiff in *Russo*—who did not seek medical attention, and who pleaded vaguely that she suffered from stress and "its physical symptoms," *Russo*, 400 S.E.2d at 163—Ms. McCaffrey has alleged that she sought medical attention, incurred medical expenses, and suffered mental anguish so severe that it caused the objective, "symptomatic reaction[s]" listed above.  Am.

---

[18] While physical contact is not required to establish a claim for IIED, it does eliminate the concern that plaintiff may more easily feign "non-tactile" injuries.  *See Supervalu*, 666 S.E.2d at 343 ("[T]here are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury.")); *Yancey v. First Bank*, No. 6:16-cv-00028, 2016 WL 4126661, at *2 (W.D. Va. Aug. 2, 2016); *Gammon*, No. 6:16-cv-00012, 2016 WL 3982596, at *3 (W.D. Va. July 22, 2016); *Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 798, 802–03 (E.D. Va. 2003).

Compl. ¶ 25.[19]

For the reasons stated above, Ms. McCaffrey has sufficiently pled the grounds of her IIED claim, and, consequently, defendant's motion to dismiss should be **DENIED**.

## IV.    RECOMMENDATION

For the forgoing reasons, the Court **RECOMMENDS** that VPRJA's partial motion to dismiss, ECF No. 33, be **DENIED,** and that VPRJA's request to dismiss Ms. McCaffrey's complaint with prejudice be **DENIED AS MOOT**.

## V.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.   A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.   *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

---

[19] At the hearing on September 10, 2019, and in the opposition to the motion to dismiss, Ms. McCaffrey's attorney advocated that the nature of the alleged sexual assault Ms. McCaffrey suffered is prototypically the kind of conduct that would cause severe emotional distress, and that her distress should be read in the greater context of her amended complaint, not isolated from the allegations of sexual assault to which she was subjected. Pl.'s Opp. 9.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
October 4, 2019

24